PEDRO ALFONSO REYES, ETC., Plaintiff and Appellee *v.* ALBERTO APONTE ET AL., Defendants and Appellants.

No. 8475. Argued June 19, 1942.—Decided July 31, 1942.

F. *Díaz Marxuach* for appellants.    F. R. *Aponte* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

This action was brought by Pedro Alfonso Reyes, a minor represented by his father Feliciano Reyes, for the recovery of damages alleged to have been suffered by him as a result of an assault and battery committed against him in Caguas, Puerto Rico, on April 10, 1936.   The case was tried before

Judge Miguel García González of the District Court of Humacao, but as he ceased in his office before rendering judgment, by stipulation of the parties the case was submitted upon the pleadings and the stenographic record to Judge Benjamín Ortiz of the same court, who on July 21, 1941, rendered the judgment appealed from, whereby the defendants were adjudged to pay to the plaintiff the sum of $350 as damages and $90 as attorney's fees. The sum of $350 awarded, according to the last paragraph of the opinion of the lower court, is made up of the following items: $40 for the fees of the physician and the nurse; $75 for lost earnings; $100 for mental anguish, and $100 additional for damages to feelings (*daños morales*) suffered by the plaintiff.

The first assignment of error relates to the action of the court *a quo* in striking out subdivisions 1 and 2 of the special defenses alleged in the answer. The first of these was to the effect that on October 9, 1936, Pedro Alfonso Reyes, Alberto Aponte, and Manuel Díaz were tried before the Municipal Court of Caguas on a charge of breach of the peace, and as a result thereof Alberto Aponte was acquitted and each of the defendants Manuel Díaz and Pedro Alfonso Reyes was sentenced to pay a fine of $3 and costs.

In the second it was alleged that on the same day, said municipal court tried the case brought against Manuel and Críspulo Díaz and Alberto Aponte, on a charge of aggravated assault and battery filed by Pedro Alfonso Reyes, and the defendants were acquitted.

The prosecutions for breach of the peace and aggravated assault and battery referred to in the two special defenses above mentioned are based on the same facts which occurred on April 10, 1936, and which form the basis of the action brought by the plaintiff herein.

Relying on an *obiter dictum* which appears in the case of *Torres v. Heirs of Córdova,* 31 P.R.R. 849, 850, the appellants maintain that to determine the nature of a civil

liability arising from a penal act, the present Penal Code must be considered as well as the origin of the civil liability in the Spanish Penal Code, since according to the former code, the latter was repealed only in so far as it relates or refers to crimes, and §116 of the Spanish Law of Criminal Procedure provided that "the extinction of the criminal action does not carry with it the extinction of the civil action, unless the extinction be caused by a final sentence declaring that the act on which a civil action might be based did not exist." The appellants argue that, as the Municipal Court of Caguas acquitted the defendants of the supposed charge which served as a basis for the civil action brought by the plaintiff-appellee, thereby deciding that the acts on which a civil action might be based did not exist, the establishment of said special defenses would have shown the nonexistence of the cause of action now relied on.

The appellants are wrong. The Penal Code in force, which in §560 thereof contains such saving clause, became effective in this island on July 1, 1902. On March 1st of the same year there was enacted in Puerto Rico the Revised Civil Code, whose §1059, identical with §1092 of the Spanish Code provided that "civil obligations, arising from crimes or misdemeanors, shall be covered by the provisions of the Penal Code." Such provisions continued in force until by the Act of March 10, 1904, there was established the present Code of Civil Procedure, whose §2 provides: "When the violation of a right admits on both a civil and criminal remedy, the right to prosecute the one is not merged in the other." At the same time, and in order to conform the substantive law to the procedural law, there was amended §1059 of the Revised Civil Code so as to read as follows: "Civil obligations arising from crimes or misdemeanors shall be covered by the provisions *of this Code.*" (Italics ours.) In view of the definite recitals embodied, in 1904, in §§1059 and 2 of the Civil Code and of the Code of

Civil Procedure, respectively, it can not now be seriously maintained in Puerto Rico that civil obligations arising from crimes are governed by the provisions of the Spanish Penal Code. See the case of *Guzmán* v. *Vidal,* 19 P.R.R. 800, where this court, speaking through the then Chief Justice Hernández, made an exhaustive study of this question.

The second assignment of error refers to the inclusion, as damages suffered by the plaintiff, of the item of $40 for medical and nursing expenses and $75 for lost earnings. We have already seen that the judgment proper does not specify the various items for which the award of $350 was granted; but in the last paragraph of the opinion filed such specification is made by the judge, and although an appeal is not directed against the grounds of a judgment, it seems clear that if the judge, in computing the total amount of damages, took into account certain items to which the plaintiff was not entitled, said items should be deducted from the aggregate amount of the judgment.

Regarding the medical fees, Dr. F. Ellis Cambiaso, who attended the plaintiff-appellee from the time he received the injuries until he was discharged from treatment, stated that he had not been paid for his services and that the same were worth from $20 to $25. María López, the nurse who made the surgical dressing prescribed by the physician including the application of hypodermics, etc., testified that her services were worth $15, and that the plaintiff had paid her therefor. Neither testimony was contradicted by the appellants.

The appellants argue that where a minor sustains damages caused by the result or negligence of another person, such damages as consist of loss of services, expenses for medical attendance, medicines, and other similar items, do not belong to him personally but to his parent, and hence if a recovery is sought, the latter should bring an action in his own name and for his exclusive benefit. In support of their

contention they cite the case of *Rivera* v. *Reyes,* 31 P.R.R. 420, and *Karr* v. *Parks,* 44 Cal. 46. The doctrine laid down in said cases has no application to the instant case. The evidence shows that at the time the plaintiff was injured he was working and earned a weekly salary of $9; that shortly thereafter he contracted marriage with the nurse who had attended him; and that at the time of the trial he had already attained the age of twenty-one. Where a small child is involved it is presumed that the expenses for medical treatment have been paid by the parent since it is the latter's duty to do so, but where there is involved a minor who has attained the age of the plaintiff herein and who earns a salary that enables him to pay said expenses, and it does not appear from the evidence that the parent has made such payment, we fail to see why the parent should be entitled to recover money which he has not spent. By §142 of the Civil Code (1930 ed.) medical attendance is included in support (*alimentos*) and by §150 of the Civil Code it is provided that the obligation to give support shall cease "when the recipient is capable of working at a trade, profession, or industry, or has obtained employment or bettered his fortune, so that he does not stand in need of the amount given for support." Construing §152 of the Spanish Civil Code which is identical with §150 of our code, Manresa says:

"From the principle that the obligation to give support does not exist where such support is unnecessary, it follows that not even the parent is bound to give support to the child when the latter has property of his own or a profession or trade yielding the necessary income for his maintenance, and it was so declared by L. 6, tit. 19 of Partida 4th, wherein it was provided that 'when the *child owns property on which he can live, or has a trade from which he can support himself without personal detriment, then the parent is not bound to look after him.'* " 1 Manresa, (3d ed.) *Comentarios al Código Civil Español,* p. 667.

The appellants further argue that, as shown by the evidence, the employer of the defendant-appellee paid the lat-

ter his salary during the two months that he was disabled, and that, therefore, he can not claim the recovery of a salary which he did not fail to receive. The appellants are not right in this contention. The fact that the salary of the plaintiff-appellee was paid notwithstanding his absence from the work can not benefit the author of the damage and does not preclude the person injured from recovering such item. This doctrine is upheld by the majority of the authorities. See the cases collected in the extensive monographs on the subject which appear in 18 A.L.R. 678, and 95 A.L.R. 575.

However, the item of $40 should be reduced to $35, since the physician himself testified that his services were worth from $20 to $25, and in such case the lowest valuation, to wit, $20, for said services should be accepted, to which it should be added $15 for nursing expenses. The fact that at the time of the trial the physician had not yet collected his fees does not preclude a recovery therefor.

The third assignment of error is well-founded. In the award of $315, as stated by the district judge in the concluding paragraph of his opinion, are included $100 on account of mental suffering sustained by the plaintiff and $100 additional on account of damages to feelings (*daños morales*) . . . '' The latter are comprised in the concept of mental suffering and, therefore, in allowing $100 for such damages in addition to the $100 already awarded for mental suffering, the district judge did nothing else than adjudge the defendants to pay double compensation for the same damages. See on this point, 8 R.C.L. 518 *et seq.*

The defendants-appellants also argue that the plaintiff failed to allege the existence of damages for mental suffering. However, in paragraph 2 of the second amended complaint, it was alleged that ''by reason of the blows received he has suffered great discomfort and physical and mental pain.'' In the absence of a bill of particulars, such an allegation is sufficient.

■ The fourth assignment of error is directed against the finding made by the court to the effect that defendant Críspulo Díaz did not participate in the quarrel with the plaintiff. According to the evidence of the latter, on the day of the alleged assault, plaintiff was working in a certain commercial establishment in Caguas, at a weekly salary of $9 plus 1 per cent on the sales made by him. On the morning of that day, the plaintiff left the store where he worked in order to take some refreshments and in front of the establishment he found a man who was selling icecream and, upon asking the latter to serve him some icecream, he heard someone whistle across the street from the store which belongs to Enrique Díaz y Hnos., and he saw Manuel Díaz signalling him to come into said store. The plaintiff answered the call and Manuel Díaz, who was standing at the entrance of the store, accompanied him inside and after taking a few steps, upon being asked by the plaintiff what he wanted, he attacked the plaintiff and thereupon the latter repelled the attack and a struggle ensued in which Críspulo Díaz, who was also in the store, immediately participated and jointly with his brother Manuel assaulted the plaintiff striking him with his feet and fists. The plaintiff retreated defending himself, but upon reaching the door, the other defendant, Aponte, pushed him and he fell on the sidewalk from which he was picked up by Ceferino González, a bread peddler, who carried him to the first-aid station. The blows received by the plaintiff are described by Dr. F. Ellis Cambiaso as follows:

"Light contusions and ecchymosis in the right molar and temporal frontal regions and also in the lacrimal and nasoorbital regions, of a slight character. A heavy contusion in the left region of the nasal bones proper, of indeterminate prognosis, since there was epistaxis and he complained of great pain when touched. Light contusion or ecchymosis in the left frontal region, of a slight character, and several contusions in the right scapular, dorsal, and lumbar regions of slight character. A very serious heavy contusion

on the left foot in the external metatarsal region. All these injuries may heal within two weeks, but due to the indeterminate prognosis, the healing process may take a little longer. . . ."

According to the evidence of the defendants-appellants, on the above-mentioned day a customer of Enrique Díaz y Hnos. was standing on the sidewalk in front of the store looking at some shoes in the show window, and the plaintiff asked him: "Do you want any shoes? We have very good ones in the store across the street." Then Manuel Díaz addressing himself to the plaintiff said: "That is not so"; and the latter replied: "I can equally take him away from here as from inside the store"; and Díaz answered that he should show a little more respect and then the plaintiff struck Díaz on his lower lip thus starting the fight between them; that Críspulo Díaz was sick on that day and was absent from the store; and that Alberto Aponte intervened for the sole purpose of separating the two persons who were fighting.

The evidence for both parties was conflicting, but a study of the same shows, and it so appears from the record, that the plaintiff was actually assaulted by the defendants and that the assault was probably due to business rivalry. The testimony of the icecream vendor is worthy of credit, as his statements indicated that he was not prejudiced in favor or against either party. Due to the position in which the witness stood, he could see, through the open doorway entered by the plaintiff, what took place inside the establishment. His testimony was corroborated by that of the bread paddler Ceferino González and by that of Juan Ortiz, who stated that he thought of buying some shoes and went to the store of Enrique Díaz y Hnos., and that, while he was there in front of the show window, the facts giving rise to this litigation took place. The appellants complained because the district judge, who did not see the witnesses testify, gave credit to those of the plaintiff and not to those of the defendants. In our judgment, the district judge, within the means avail-

able to him, weighed the evidence correctly. The statements made by the defendants and their witnesses in their attempt to minimize the importance of the injuries received by the plaintiff are so exaggerated that it is easy to perceive that they are hiding a large portion of the truth. In the verified answer of defendant Manuel Díaz, it is emphatically denied that the plaintiff received the injuries which were inflicted on him and which were proved by the fully disinterested and uncontroverted testimony of Dr. F. Ellis Cambiaso. Manuel Díaz himself, referring to the result of the fight between him and the defendant, testified thus: "What was the result?—That he struck me and wounded me in the lower lip. —Did anything happen to him?—Nothing.—Did nothing happen to him?—It may be that something happened to him. . . —Did you not see some scratch on his face or on his chest or on a foot?—I did not see any."

How could the trial judge give any credit to a testimony so contrary to reality, when from the uncontroverted evidence for the plaintiff, particularly the testimony of the physician who treated him, it appeared that the plaintiff exhibited several face wounds and contusions? It is urged that the district judge should not have given credit to the plaintiff and his witnesses by finding that Críspulo Díaz participated in the assault against Pedro Alfonso Reyes. They say that Dr. J. J. Nogueras testified that during the first days of April 1936, he attended Críspulo Díaz who was suffering from an intestinal disturbance and was confined in bed, and that this testimony contradicts that of the witnesses for the plaintiff. However, Dr. Nogueras upon being asked on what days he had attended said defendant answered: "During the month of April, the first days of April; on or about the 10th, 8th or 10th, about that time . . ." And when he was asked: "But don't you remember on what days?" he answered: "Not exactly." Could the district judge accept such an indefinite testimony as this in order to refuse

to accord credit to eyewitnesses who testified that on April 10, 1936, Críspulo Díaz participated in the assault? We think that the fourth error assigned is nonexistent.

The fifth assignment refers to the pronouncement whereby the defendants were adjudged to pay $90 as attorney's fees. It is urged that there was no obstinacy on the part of the defendants in opposing such an exaggerated claim as the one made by the palintiff, regard being had for the amount that was finally awarded to him by the judgment. Said claim was indeed exaggerated, for in the original complaint prayer was made for the recovery of $10,000 as actual damages, plus $2,000 as exemplary or punitive damages and costs, and in the second amended complaint, the claim was reduced to $5,000 for actual damages and $2,000 as exemplary or punitive damages, but it is no less true that the defendants absolutely denied the existence of the damages claimed and thereby assumed an obstinate position. *Font* v. *Viking Construction Corp.*, 58 P.R.R. 691, 714. In view of the work actually done by the attorney for the plaintiff in the lower court, we do not think that we should interfere with the discretion of the district judge in fixing the attorney's fees at $90.

For the reasons stated the judgment appealed from should be modified by reducing to $210 the award for damages plus $90 for attorney's fees and costs, and as thus modified, the judgment should be affirmed.

Mr. Chief Justice Del Toro and Mr. Justice Travieso did not participate herein.